NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHARLES THOMAN | : |
| Plaintiff, | : Civ. No. 04-3698 (GEB) |
| v. | : **MEMORANDUM OPINION** |
| PHILIPS MEDICAL SYSTEMS, | : |
| Defendant. | : |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of defendant Philips Medical Systems ("Defendant") for partial summary judgment of the Complaint of plaintiff Charles Thoman ("Plaintiff"). The motion for partial summary judgment was filed on behalf of Defendant on April 21, 2006. This matter was reassigned to the undersigned on November 16, 2006. The Court has read and considered all documents filed and submitted and has decided the motion based upon the parties' submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendants' motion for summary judgment is granted as to Counts One, Two, Three and Four.

**I. BACKGROUND**

Plaintiff was a service sales specialist in the field of medical equipment and was employed by Picker Marconi for ten years, voluntarily resigned in 2000 and sought to return there in mid-2001. Thoman Certif. ¶ 1; Certification of Joseph Graham, ¶ 4; Thoman Vol. I, T7-13 to 18; T9-18 to 19; T27-15 to 19. During the time Plaintiff wished to return to Picker Marconi, Defendant Philips was

in the process of acquiring the company.  Thoman Vol. I, T8-5 to 8.  On May 10, 2002, Plaintiff received an offer of employment and commenced working shortly thereafter.  Graham Certif., ¶ 4; Certification of Eugene Prendergast, Exh. R.  Plaintiff was born in 1944 and was fifty-seven years old at the time he was hired by Defendant.  Certification of Charles Thoman, ¶ 1; Certification of Jeffrey L. Reiner, Exh. A, 15:21 to 17:5.

According to Plaintiff, during the acquisition, Defendant's organization was disorganized as it integrated additional business, sales methods, documentation and payments into Defendant's system.  Graham Certif., ¶ 5.  Plaintiff claims that with respect to service sales, the filing, record keeping and determination and payment of commissions was in a constant state of disarray.  Graham Certif., ¶ 5; Thoman Vol. I, T50-23 to T51-3; T109-11 to 13.  Around the time Plaintiff was hired, the Senior Vice President of Service Sales issued a memorandum to the service sales specialists regarding certain contracts for which no records existed.  Graham Certif., ¶ 5.

Eugene Prendergast, the Zone Manager for Defendant, was Plaintiff's supervisor and responsible for administering his annual performance appraisal.  Defendant's Statement of Facts ("SOF"), ¶ 7.  Mr. Prendergast gave Plaintiff a "very good" rating during his 2002 review, which encompassed the period from May 2002 until December 31, 2002.  Id.  Within forty-five days of being hired, Defendant and Mr. Prendergast realigned the territories and accounts of the sales staff.  Graham Certif., ¶ 14; Certification of Dennis O'Toole, ¶ 6; Thoman Vol. II, T210-7 to T217-22.  Plaintiff claims that during that alignment he acquired some of Mr. O'Toole's accounts, including one in dispute, the Lenox Hill Hospital.  Graham Certif., ¶ 14; O'Toole Certif., ¶ 6; Thoman Vol. II, T210-7 to T217-22.  Plaintiff claims that he worked on the Lenox Hill account by establishing personal relationships and attending meetings regarding the multi-vendor proposal.  O'Toole Certif.,

¶ 9; Thoman Vol. II, T210-7 to T217-22.  Mr. Prendergast maintains that the Lenox Hill account was not Plaintiff's account.  Prendergast Certif., ¶¶ 37-44.

According to Plaintiff, Mr. Prendergast gave him old copies of Defendant's databases which included whether existing customers would be in need of service contracts for medical equipment. Thoman Vol. I, T53-4 to T54-22.  Plaintiff developed prospects to pursue from these lists, including University Radiology, Sparta Imaging, Sussex County Imaging and Greene Medical Imaging. Thoman Vol. I, T-48-4 to 9.  Plaintiff claims that according to the documents, these accounts did not have service agreements in place once the warranties ended, and so Plaintiff contacted each customer by telephone to solicit service agreements.  Thoman Vol. I, T50-12 to 18; Thoman Vol. II, T222-20 to T225-5.  Plaintiff admits that he did not confirm the accuracy of the documents prior to contacting the customers.  Thoman Certif., ¶ 8.  For all four accounts, Plaintiff secured a signed quotation, and the time between first contact with the customer and securing a signed quotation was less than thirty days.  Thoman Vol. I, T73-14 to T78-23; T84-15 to T95-24; T99-14 to T103-18.  Plaintiff delivered the signed quotations to Mr. Prendergast for review and then forwarded them to booking.  Plaintiff did not retain copies of the signed quotations.  Thoman Vol. I, T57-21 to T58-5; T97-21 to 24.  A quotation is considered "booked" once it has been reviewed by a contract administrator, approved by a manager and entered into the computer system.  Thoman Vol. II, T242-18 to 19.

Between August and December 2002, Plaintiff learned that in each of the four accounts he submitted for booking, a service agreement had already been sold to the customer before Plaintiff was employed by Defendant.  Thoman Vol. I, T60-19 to 22.  Plaintiff claims that he advised the booking department that the appropriate course of action was to process the pre-existing contracts, not the ones he had recently prepared for those four accounts.  Thoman Vol. I, T61-25 to T62-4;

T69-19 to 22; T70-2 to 5; T114-1 to 15. Plaintiff contends that he informed Mr. Prendergast about the situation - that Plaintiff had put in a lot of work on these four accounts and secured service agreements only to find out later that the customers already had service agreements - and they discussed the commissions for the accounts. Thoman Vol. I, t63-15 to 22; T72-17 to T73-13; Thoman Vol. II, T236-16 to T240-8. Plaintiff claims that Mr. Prendergast assured him that his receiving a commission was not a problem, and that Plaintiff should enter the old contracts on booking sheets and forward them to the central office. Id. Mr. Prendergast denies that such a meeting took place.

Between February and April 2003, these four accounts were addressed by Defendant as part of a validation process which reviewed many of the sales from 2002 and their commissionability. Thoman Certif., ¶ 13. All sales specialists were given an Issues to Resolve list, and were instructed to respond to the items on their list and submit them to an Audit Committee for review, further discussion or final decision. Id. Plaintiff's list included the four accounts at issue - University Radiology, Sparta, Sussex and Greene. Thoman Certif., ¶ 14. The committee indicated that the commissions were denied for these accounts because the contracts were sold in 2001, prior to Plaintiff's employment with the company. Id. Plaintiff responded to the four rejections as follows:

> Presented proposals to Customer at Customer's request. After signing and submission it was discovered that this customer had signed a POS agreement. It was buried in some file and forgotten. My inquiry caused the issue to surface. However, the ethical approach was to submit the original document.

Plaintiff claims that with all four accounts he did not know that there were service contracts in place before he started working on the accounts. Id. Plaintiff also claims that with all four accounts a POS service contract had been sold to the customer in 2001 when the equipment sale was

4

made, however, those contracts had not been booked. Id. According to Plaintiff, until May 2003 there was no activity regarding the four contracts and no one discussed the matter with him or suggested that he withdraw any claim for commissions. Thoman Certif., ¶ 16. In May 2003, he received a response from the Audit Committee regarding the four accounts, which stated: "Rejected need copy of new agreement." Thoman Certif., ¶ 17. The response was issued by Larry Simanek, the Director of Sales Service Administration. Def.'s SOF, ¶ 14.

Plaintiff claims that the company never informed him that they were seeking copies of the newly signed quotations obtained by Plaintiff that past year. Id. Plaintiff understood the request for the new agreements to be the 2001 agreements that had been newly booked. Id. Plaintiff claims that because the new quotations he received never achieved agreement status and had not been booked, that he believed Defendant was requesting the 2001 signed agreements. Id. Plaintiff did not have the more recent, signed quotations in his possession, as he did not retain copies. Defendant contends that after Mr. Simanek's request for more information on the four accounts, Mr. Prendergast sent an email to Plaintiff on May 7, 2003 directing Plaintiff to "[h]ave copies of the signed contracts and PO's that you sold in 02 for items 2 [Greene], 4 [Sparta], 5 [Sussex], 6 [University], 24, 25. We are going to need them faxed." Def.'s SOF ¶ 15.

During discovery, Plaintiff did not produce copies of any of the 2002 contract or purchase orders for the service contracts for the four accounts. Def.'s SOF, ¶¶ 16, 17. The four accounts, Greene, Sparta, Sussex and University, also did not produce any signed service agreements or purchase orders from Defendant during the period of May through December 2002. Def.'s SOF, ¶ 18. While Plaintiff explains that his booking requests for these four accounts brought to the light the fact that the previous contracts were not booked and were lost, Defendant puts forth the

testimony of Sharon Lucas, who testified that she entered the 2001 University contract into the computer on July 27, 2001 and it was never lost or misplaced. Def.'s SOF, ¶ 33. Defendant also offers the testimony of Josette Viik that the Sussex and Sparta agreements were not buried in a file, but were entered into the computer system in 2002 and 2003, and that the Greene agreement was not lost or misplaced, rather she performed some necessary computer functions for this account in September 2002. Def.'s SOF, ¶ 34.

During 2002 and 2003, all service sales specialists reporting to Mr. Prendergast submitted monthly forecasts with respect to their sales activity, including information on all of the service agreements booked during that month, current sales activities, transactions the specialist anticipated closing within thirty, sixty and ninety days, and prospects the specialist was pursuing. Def.'s SOF, ¶ 23. Defendant contends that Plaintiff's monthly forecasts do not accurately reflect the claimed activity regarding the four accounts at issue. Def.'s SOF, ¶ 24, 25, 26. Plaintiff explains the discrepancies in his monthly forecasts by stating that he learned about the accounts after he turned in the prior monthly forecast, and obtained signed agreements on the day of his presentations to these companies. Def.'s SOF, ¶ 29.

Defendant contends that Mr. Prendergast brought the problem with the four accounts to the attention of Amy Giustino, Defendant's Human Relations department representative, who directed him to prepare a synopsis of the facts for Paul Murdoch, the Senior Vice President of Customer Services. Def.'s SOF, ¶ 39. Defendant claims that Plaintiff's performance had deteriorated during 2003. Def.'s SOF, ¶ 41. Defendant hired Steve Kellett to replace Mr. Murdoch, and Mr. Kellett was charged with determining what to do about Plaintiff's employment. Def.'s SOF, ¶ 42. On June 17, 2003, Plaintiff was terminated on the basis of unethical conduct regarding the aforementioned four

accounts. Thoman Certif., ¶ 18; Def.'s SOF, ¶ 11. Following Plaintiff's termination, his sales territory was covered by an existing employee, Bob Antonishak, age fifty-four, and Marylou Graham, age forty-five. Def.'s SOF, ¶ 51. On December 15, 2003, Mr. Prendergast hired Beth Gilchriest as a service specialist. Id. Ms. Gilchriest assumed the majority of Plaintiff's prior job duties. Id. At the time of her hire, Ms. Gilchriest was fifty years old. Id.

## II. DISCUSSION

### A. Standard Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; see also Lujan v. Nat'l

Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted).[1] However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

### B. **Plaintiff Fails to Satisfy his Burden on his Age Discrimination Claims**

Plaintiff's Complaint alleges discrimination on the basis of age pursuant to the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 to -49 ("NJLAD") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). The Third Circuit has recognized that the

---

[1] The Court notes that while Plaintiff submitted a statement of material facts pursuant to L. Civ. R. 56.1, the statements were not supported by affidavits, deposition testimony or documents. The Plaintiff also did not properly respond to Defendant's statement of undisputed facts, and therefore this Court was unable to determine what facts Plaintiff disputes. The Court will look to Plaintiff's counter-statement of facts contained in his brief in opposition to the motion for partial summary judgment which provides citations to the record pursuant to L. Civ. R. 56.1.

New Jersey Supreme Court, "[i]n the absence of divergent language between the NJLAD and federal discrimination laws, . . . has applied federal standards in NJLAD cases 'in the interest of achieving a degree of uniformity in the discrimination laws.'" Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir.) (citations omitted), cert. denied, 543 U.S. 814 (2004). Consequently, the Court will apply the McDonnell Douglas burden shifting analysis to Plaintiff's claims. See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)(citations omitted), cert. denied sub nom. Sarullo v. Potter, 541 U.S. 1064 (2004).

Plaintiff must first prove a *prima facie* case of discrimination by a preponderance of evidence. See Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)(quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). To make a prima facie case here, Plaintiff must prove 1) that he belongs to a protected class; 2) that he was qualified for the position; 3) that despite his qualifications he was terminated; and 4) that under circumstances raising an inference of discrimination, the employer continued to seek out individuals with qualifications similar to Plaintiff's to fill the position. See Sarullo, 352 F.3d at 797 (citing McDonnell Douglas, 411 U.S. at 802 and Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n.1 (3d Cir. 1999)); see also Abramson v. William Patterson College of New Jersey, 260 F.3d 265, 281-82 (3d Cir. 2001); Warner v. Federal Express Corp., 174 F.Supp. 2d 215, 219 (D.N.J. 2001)(stating that the fourth prong is satisfied by presenting evidence "that Plaintiff was replaced by persons sufficiently younger to create the inference of age discrimination").

Once established, Plaintiff's *prima facie* case creates a rebuttable presumption of discriminatory intent. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Burdine, 450 U.S. at 254. While the ultimate burden of proof always remains with Plaintiff, the burden of

10

production now shifts to Defendants, who must articulate a legitimate, nondiscriminatory reason for their actions. See Hicks, 509 U.S. at 507; Burdine, 450 U.S. at 253. To satisfy their burden, defendants must come forward with admissible evidence supporting the nondiscriminatory reason or reasons for their actions. See Burdine, 450 U.S. at 255. "The McDonnell Douglas formula is grounded in the presumption that if a rational reason for disparate treatment is not forthcoming, it is more likely than not that illegal discrimination played a role in the [adverse] decision." Chauhan v. M. Alfieri Co., 897 F.2d 123, 127 (3d Cir. 1990)(citations omitted). Once defendants satisfy their burden, the presumption of discriminatory intent is rebutted and drops from the case. See id.

The burden of production then shifts back to plaintiff, who must come forward with admissible evidence showing that the articulated nondiscriminatory reasons were not the true reasons for the adverse action, but merely a "pretext for discrimination." McDonnell Douglas, 411 U.S. at 804; Hicks, 509 U.S. at 507-08; Burdine, 450 U.S. at 253. "[A] plaintiff does not need direct evidence of pretext in order to survive summary judgment." Chauhan, 897 F.2d at 127 (citing Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir.), cert. dismissed, 483 U.S. 1052 (1987)). "Instead, a plaintiff needs to be able to 'point[] to evidence which calls into question the defendant's intent.'" Id. (quoting Chipollini, 814 F.2d at 899). "In sum, the plaintiff cannot rely solely on a potential finding that the defendant's explanation is implausible. The fact that a judge or a jury might disbelieve the defendant's asserted nondiscriminatory reason is not enough, by itself, to preclude summary judgment. Rather, the plaintiff must be able to adduce evidence, whether direct or circumstantial, from which a reasonable jury could conclude that the defendant's explanation is incredible." Id. at 128 (citation omitted).

Plaintiff claims that he was terminated from his employment with Defendant based on his

age. Plaintiff was fifty-nine years old at the time he was discharged, thus placing him in the protected age group for both the NJLAD and the ADEA. Under McDonnell Douglas, Plaintiff must demonstrate that his employer replaced him with a younger individual, giving rise to an inference of age discrimination. Defendant argues that Plaintiff cannot establish a *prima facie* case of age discrimination because he was not replaced by a new hire until six months after he left the company and that initially his position was covered by two existing employees, aged fifty-four and forty-five. Further, upon hiring a replacement for Plaintiff, Defendant hired a fifty-year-old woman to cover the bulk of his former territory.

Defendant contends that the age difference - Plaintiff was fifty-eight when terminated and his replacement was fifty - does not constitute an inference of age discrimination. "[I]n order to satisfy the sufficiently younger standard, 'there is no particular age difference that must be shown, but while different courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot.'" Monaco v. American General Assurance Co., 359 F.3d 296, 307 (3d Cir. 2004) (quoting Showalter v. Univ. of Pittsburg Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999)). Defendant claims that Plaintiff's territory was handled by two existing employees - aged fifty-four and forty-five - until his replacement was hired six months later. The Court follows the standard set forth above and finds that Plaintiff has satisfied the fourth prong by demonstrating that the immediate, temporary replacements and the permanent replacement hired six months after his termination were younger than Plaintiff.

Having found that Plaintiff has presented a *prima facie* case of age discrimination, and with the ultimate burden of proof still remaining with Plaintiff, the burden of production now shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. To that

end, Defendant has asserted that Plaintiff was terminated due to "unethical conduct," which involved his claims for commissions on the four accounts in controversy. As documented in detail, Plaintiff was questioned about the four accounts and was given the opportunity to provide his employer with documents to substantiate his claims to these service contracts. Defendant determined these contracts were actually sold prior to Plaintiff's employment with the company. Plaintiff failed to provide any documents or evidence to validate his contention that he was entitled to the commissions, and Defendant terminated him based on what it found to be unethical conduct. This legitimate, non-discriminatory reason for terminating Plaintiff is supported by Defendant's affidavits, testimony and documents.

Consequently, it is Plaintiff's burden to show that this reason was merely pretext for discrimination. However, the Court concludes that Plaintiff's claim fails here. Plaintiff has not presented evidence demonstrating that Defendant's stated reason for his termination was merely pretext for discrimination or based upon anything other than his conduct. Plaintiff must point to evidence which calls into question the Defendant's intent. In this case, Plaintiff asserts that the purported unethical conduct is not credible, however, he does not cite to specific evidence to support this claim. Rather, Plaintiff makes broad allegations, for instance, that Mr. Prendergast's credibility is questionable, and since the termination for unethical conduct was initiated by Mr. Prendergast as Plaintiff's supervisor, the credibility of the legitimate reason must also be questioned.

Plaintiff also claims that Mr. Prendergast made a comment to him that a fellow employee, three years younger than Plaintiff, should leave the company because "[h]e's too old for this job." Thoman Vol. II, T283-23 to T284-8. Plaintiff claims that certain service sales specialists were given new assignments, and Plaintiff received a less profitable assignment than a younger specialist.

Reiner Certif., Exh. F.  In his deposition, Plaintiff claims that the older employees were treated differently than the younger employees by Mr. Prendergast, specifically, that he treated them "[g]enerally rude, not respectful of their feelings . . . very aloof."  Thoman Vol. II, T285-19 to 25.  Plaintiff cited to a specific example where Mr. Prendergast questioned whether he should have been working at a certain office, and Plaintiff claims this demonstrated the way Mr. Prendergast treated Plaintiff differently than younger employees.  Thoman Vol II, T283-13 to 24.  Plaintiff, however, could not explain a similar situation where one of the younger employees was actually treated differently.  Thoman Vol. II, T286-1 to 20.

      Even viewing the facts in a light more favorable to Plaintiff, he has failed to put forth evidence that demonstrates the legitimate, non-discriminatory reason for his termination was merely a pretext for age discrimination.  Plaintiff makes generalizations regarding the different manner in which his supervisor, Mr. Prendergast, treated the older and younger sales specialists, however, does not cite to any specific examples or conversations that would question the legitimacy of Defendant's reason for terminating him.  Plaintiff has not carried his burden to show that Defendant's reason, unethical conduct, is not credible.  In order to survive a motion for summary judgment, Plaintiff must go beyond mere allegations and point to specific instances and evidence which support his claims.  The Court concludes that there are no genuine issues of material fact and that the evidence demonstrates that Defendant terminated Plaintiff based upon his conduct and not in a discriminatory manner prohibited by NJLAD or the ADEA.  Consequently, Defendants' motion for summary judgment is granted with respect to Plaintiff's claims under NJLAD and the ADEA (Counts One and Two).

### C. Plaintiff is not Permitted to Amend his Claim of a Violation of Good Faith and Fair Dealing

Count Four of the Complaint, "Violation of Covenant of Good Faith and Fair Dealing" alleges that "[t]he termination of Plaintiff by Defendant was so egregious and so contrary to the heart and essence of his employment agreement with Defendant as to violate the covenant of good faith and fair dealing implied in every employment agreement . . . [a]s a direct [result] of his unlawful termination, Plaintiff has been caused to sustain serious economic loss and emotion distress and humiliation." Absent an express or implied employment contract, "there is no implied covenant of good faith and fair dealing." Wade v. Kessler Inst., 172 N.J. 327, 345 (2002); DeJoy v. Comcast Cable Communs., 968 F.Supp. 963, 989 (D.N.J. 1997). Defendant contends that the covenant of good faith and fair dealing does not exist with at-will employment. Citizens Bank of New Jersey v. Libertelli, 215 N.J. Super. 190, 194 (App. Div. 1987); McDermott v. Chilton Co., 938 F.Supp. 240, 246 (D.N.J. 1995). In Plaintiff's opposition, he acknowledges that Count Four is "not well-crafted both in allegations an relief sought and thereby suggests a wrongful termination . . .claim." Pl.'s Br. at 41. Plaintiff concedes that as stated, Count Four is subject to dismissal, however, Plaintiff intended this claim to sound in contract, and to pursue recovery for commissions Plaintiff allegedly earned during the first half of 2003 but was not paid due to his termination. Id. Regardless of whether employment is "at will," an implied obligation of good faith and fair dealing attaches to any contractual aspect of an employment relationship. Nolan v. Control Data Corp., 243 N.J. Super. 420, 429 (App. Div. 1990).

Plaintiff requests that this Court regard the Complaint as amended as discussed above or permit Plaintiff to amend the Complaint and consider this motion in light of such an amendment.

15

In this case, the Court entered a Scheduling Order on February 7, 2005, which delineates March 1, 2005 as the deadline for filing a motion to amend the pleadings.  Given the untimeliness of Plaintiff's request to amend, Fed. R. Civ. P. 16(b) governs whether Plaintiff will be allowed to file an Amended Complaint.  Under Fed. R. Civ. P. 16(b), Plaintiff is required to establish good cause before he will be allowed to amend.  The Court has great discretion in determining what kind of showing the moving party must make in order to satisfy the good cause requirement of Fed. R. Civ. P. 16(b).  3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE , § 16.14[1][b] (Matthew Bender 3d ed. 1997).  Whether good cause exists depends upon the diligence of the moving party. Fed. R. Civ. P. 16(b) advisory committee's note; Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990)).  Good cause may be satisfied if the movant shows that his delay in filing the motion to amend stemmed from "any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order." Newton v. Dana Corp. Parish Division, 1995 WL 368172, at *1 (E.D.P.A. 1995) (quoting Gestener Corp. v. Case Equipment Co., 108 F.R.D. 138, 141 (D. Me. 1985)).  The good cause requirement must be read in conjunction with the directive of Fed. R. Civ. P. 15(a), that leave to amend be "freely given" such that both standards are met before amendment is allowed. Reynolds v. Borough of Avalon, 799 F.Supp. 442, 450 (D.N.J. 1992).

Here, Plaintiff merely states that he intended to pursue a breach of the covenant of good faith and fair dealing based on a service contract, however, the claim as stated was not so drafted and instead asserts a breach based on wrongful termination.  The Court finds that Plaintiff has not satisfied the good cause standard necessary to amend the Complaint at this late date.  Discovery concluded in this case on March 15, 2006.  Defendants would be prejudiced if Plaintiff were

permitted to revise a claim which was filed in 2004. Plaintiff has not put forth good cause for amending this claim, or explained how mistake or excusable neglect is present. Accordingly, the Court will grant summary judgment as to Count Four, as currently stated and will not permit Plaintiff to amend his Complaint to revise Count Four.

### D. Remaining Counts (Three and Five)

In Plaintiff's opposition brief, he does not oppose that Count Three, alleging that the termination of Plaintiff was in violation of state whistle blower laws of New Jersey (N.J.S.A. 34:19-1 et seq.), New York, Pennsylvania and Washington, should be dismissed. Therefore, Count Three of the Complaint is dismissed.

Further, in Defendant's reply brief, it withdraws its motion for summary judgment as to Count Five, regarding breach of contract as to the Lenox Hill Hospital account. Therefore, Count Five remains.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment is granted as to Counts One, Two, Three and Four. An appropriate form of order accompanies this Memorandum Opinion.

Dated: January 24, 2007

                                                    s/ Garrett E. Brown, Jr.
                                                    GARRETT E. BROWN, JR., U.S.D.J.